UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ELIZABETH K.,[1]

                                                  Plaintiff,

                                                  Case # 19-CV-1671-FPG

v.

                                                  DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                               Defendant.
_____

## INTRODUCTION

Plaintiff Elizabeth K. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for disability insurance benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g). Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 6, 8. For the reasons that follow, the Commissioner's motion is GRANTED, and Plaintiff's motion is DENIED.

## BACKGROUND

In June 2016, Plaintiff applied for DIB under Title II of the Act with the Social Security Administration (the "SSA"). Tr.[2] 11, 157–58. She alleged disability beginning on March 25, 2016 due to spasmatic dysphonia, hip problems, arthritis, back problems, hypertension, high cholesterol, bladder issues, varicose veins, knee problems, and partial rotator cuff tear. *Id.* On September 27, 2018, Plaintiff and a vocational expert (the "VE") appeared and testified at a hearing before Administrative Law Judge Stephen Cordovani (the "ALJ"). Tr. 11, 24. On October 29, 2018, the

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 4.

1

ALJ issued a decision finding that Plaintiff was not disabled. Tr. 11–24. On October 18, 2019, the Appeals Council denied Plaintiff's request for review. Tr. 1–4. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). It is not the Court's "function to determine *de novo* whether plaintiff is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks and brackets omitted).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470–71 (1986); 20 C.F.R. § 404.1520(a). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(a)(4)(ii), (c). If the claimant does not have a severe

impairment or combination of impairments, the analysis concludes with a finding of "not disabled." *Id.* If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(a)(4)(iii). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations caused by his or her collective impairments. *See id.* § 404.1520(a)(4)(iv), (e)–(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits claimant to perform the requirements of his or her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(a)(4)(v), (g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.     The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity from March 25, 2016 through the date of the ALJ's decision. Tr. 13. At step two, the ALJ found that Plaintiff

had several severe impairments: obesity; bilateral rotator cuff tears, status post left surgical repair; right carpal tunnel syndrome, status post carpal tunnel release; mild degenerative joint disease of the right hip; bilateral knee chondrocalcinosis with minimal medial joint space narrowing; degenerative disc disease, low back; urinary stress/urge incontinence; and spasmatic dysphonia. *Id.* At step three, the ALJ found that these impairments did not meet or medically equal any Listings impairment. Tr. 14.

Next, the ALJ determined that Plaintiff had the RFC to perform sedentary work with certain limitations. Tr. 16. Specifically, the ALJ found that Plaintiff could: occasionally perform overhead work; frequently handle and finger with her right, dominant hand; and occasionally climb ramps and stairs. *Id.* The ALJ also concluded that Plaintiff could not: use vibratory tools with her right hand; perform forceful gripping or grasping with her right hand; kneel, crouch, or crawl; or climb ladders, ropes, or scaffolds. *Id.* The ALJ further noted that Plaintiff must use a cane for ambulation; she needs additional restroom breaks totaling less than ten percent of the workday; her work station must be within five minutes of a restroom; and she would be absent from work no more than ten days per year. *Id.* At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as an order clerk. Tr. 23. The ALJ therefore concluded that Plaintiff had not been disabled from March 25, 2016 through the date of the decision. *Id.*

**II.     Analysis**

Plaintiff argues that the ALJ erred by: (1) assessing an RFC that was not supported by substantial evidence, and (2) finding at step four that Plaintiff was capable of performing her past work. ECF No. 6-1 at 15–25. The Court disagrees.

*A.     RFC Determination*

A claimant's RFC reflects what she "can still do despite . . . her limitations." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (internal quotation marks omitted). Plaintiff argues that the ALJ traversed this standard by finding that Plaintiff only needs restroom breaks totaling less than ten percent of the workday and in assessing Plaintiff's capacity to use her right hand. ECF No. 6-1 at 15–18, 21–25.

1.     Restroom Breaks

Plaintiff generally argues that the ALJ's determination that she was capable of performing sedentary work if, among other limitations, she was permitted to take restroom breaks totaling less than ten percent of the workday (the "off-task-time limitation") is not supported by substantial evidence. ECF No. 6-1 at 15–18; Tr. 16. The ALJ explained that this limitation related to Plaintiff's claimed need to use the restroom every thirty minutes, but the record did not support "any special accommodation" for her bladder impairment. Tr. 17, 22. Plaintiff argues that the off-task-time limitation finds no support in the record and is based on the ALJ's own lay judgment rather than a competent medical opinion. The Court disagrees.

An RFC determination need not "perfectly correspond" with the medical source opinions cited in the ALJ's decision; rather, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). "While an ALJ may render common sense judgments about functional capacity, she must avoid the temptation to play doctor." *Agostino v. Comm'r of Soc. Sec.*, No. 18-CV-1391, 2020 WL 95421, at *3 (W.D.N.Y. Jan. 8, 2020) (internal quotation marks and brackets omitted).

Plaintiff argues that the ALJ traversed this standard by failing to support his assessment of Plaintiff's off-task-time limitation with a competent medical opinion. ECF No. 6-1 at 15–18; ECF No. 11 at 2–5. The ALJ gave little weight to the opinion of the consultative physician John Schwab, D.O. Tr. 22. Dr. Schwab examined Plaintiff on August 22, 2016. Tr. 402. Plaintiff told Dr. Schwab that she had a tightening done for her urinary bladder in 2009, had a "sling done" in 2010, and was on medication for the condition. *Id.* Dr. Schwab, however, opined that Plaintiff had no restrictions. Tr. 405. The ALJ gave significant weight, however, to the opinion of Plaintiff's treating urologist, Alma Eddib, M.D. Tr. 22, 725. On August 20, 2018, Dr. Eddib completed a functional capacity assessment and opined on Plaintiff's "ability to do work-related physical activities sustained throughout a regular work schedule (8 hours per day, 5 days per week . . . )." Tr. 725. Dr. Eddib opined that Plaintiff had no limitations in her ability to lift and carry, stand and walk, to sit, to push, or to pull and noted no other limitations related to her bladder issues. *Id.*

The opinions of Drs. Eddib and Schwab support the ALJ's determination that Plaintiff needs restroom breaks totaling *less* than ten percent of the workday. Tr. 16. Both were aware of Plaintiff's urinary issues (particularly Dr. Eddib, who treated her for those issues), and neither noted any limitations due to the frequency of her urination. Tr. 402–05, 725. The ALJ "is entitled to rely not only on what the record says, but also on what it does not say." *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983). Although no opinion evidence supports the precise apex of off-task-time the ALJ found Plaintiff may require (or any amount of off-task-time for that matter), the ALJ was required to meet no such standard. *Matta*, 508 F. App'x at 56.

Plaintiff relies on the Second Circuit's decision in *Cosnyka v. Colvin*, 576 F. App'x 43 (2d Cir. 2014). ECF No. 6-1 at 15; ECF No. 11 at 2. In *Cosnyka*, a medical expert opined that the claimant "would require 'regular comfort breaks.'" 576 F. App'x at 46. The ALJ purportedly

accounted for that limitation by limiting the claimant to ten percent off-task time or six minutes out of every hour. *Id.* There was no evidence, however, that such a limitation would account for claimant's needed "regular comfort breaks." *Id.* Here, there is no comparable medical opinion that the ALJ failed to adequately translate; both relevant opinions do not note *any* limitations.

The Second Circuit addressed a similar limitation in *Johnson v. Colvin*, 669 F. App'x 44 (2d Cir. 2016) (summary order). In that case, the ALJ gave "considerable weight" to a medical opinion that claimant "would have minimal to no limitations" but might struggle "to maintain a regular schedule." *Id.* at 47. That opinion and other record evidence supported "[t]he ALJ's conclusion that [claimant] could perform light work at a slightly slower than average pace." *Id.* "The fact that the ALJ assigned a particular percentage range (0–10%) to illustrate [claimant]'s limitation d[id] not undermine the fact that the ALJ's finding was supported by substantial evidence." *Id.* Similarly here, the fact the ALJ assigned a particular percentage range to the off-task-time limitation (less than ten percent) does not undermine the fact that the ALJ's finding was supported by substantial evidence.

Even setting aside the opinion evidence, an ALJ's RFC determination need not be supported by a specific medical opinion, particularly where the claimant has failed to adduce evidence inconsistent with the ALJ's RFC determination. *See, e.g.*, *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109–10 (2d Cir. 2020) (summary order) (finding that, "although there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination," that determination was supported by substantial evidence because treatment notes were "in line" with the determination and the plaintiff "failed to adduce any medical evidence inconsistent with the ALJ's determinations"); *Pellam v. Astrue*, 508 F. App'x 87, 90–91 (2d Cir. 2013) (summary order) (upholding an ALJ's RFC determination where the ALJ "rejected" a consultative examiner's

7

opinion but the "opinion largely supported the ALJ's assessment of" claimant's RFC and the RFC was supported by the treatment notes of claimant's doctors).

Here, there are medical records noting complaints of frequent urination or an "overactive bladder." Tr. 487, 625, 648, 652, 657, 737. Further, testing in September 2016 showed reduced bladder capacity. Tr. 635. But these records do not specify the frequency of such episodes. Accordingly, none of these records actually conflict with the ALJ's off-task-time limitation. Further, multiple medical records indicate that Plaintiff denied the need to frequently urinate. Tr. 518, 522, 525, 528, 565.[3] On a form she completed for Dr. Eddib, she noted that she goes to the restroom three to six times per day (the lowest option available on the form). Tr. 644 (but reporting some issues with urgency). She also regularly reported that her urinary symptoms improved with medication. Tr. 636, 649, 651, 655, 737.[4]

Plaintiff testified that she needed to urinate every thirty minutes. Tr. 40. But even that testimony does not necessarily contradict the ALJ's RFC determination.[5] In any event, the ALJ rejected Plaintiff's credibility regarding the severity of this limitation, Tr. 17, 22–23, a

---

[3] Multiple medical records suggest that her primary complaint was related to urgency and leakage/incontinence, not the frequency of her urination. Tr. 493, 549, 620, 637–38, 645, 647, 650, 657. *But see* Tr. 635 (testing noted no evidence of stress incontinence).

[4] At one point, she reported that the medication was not working as well as it had previously, but this complaint appears to have been resolved by a medication change. Tr. 658, 737.

[5] At most, using the restroom every thirty minutes would result in fifteen restroom breaks during an eight-hour workday. This of course assumes that Plaintiff could go to the restroom immediately before beginning and immediately upon concluding her shift, but because the VE testified that there are two fifteen-minute breaks and a lunch in a typical workday, Tr. 63, it is likely that fifteen is an overestimate of the number of necessary breaks. As Plaintiff points out, however, the number of breaks is only one half of the equation. You must know how long it takes Plaintiff to use the restroom to determine if using the restroom every thirty minutes is inconsistent with the ALJ's off-task-time determination. The off-task-time limitation provides that Plaintiff may be off task for up to forty-two minutes. Tr. 64. Assuming fifteen breaks (which again is an overestimate), this would give Plaintiff 2.8 minutes to use the restroom, which is inconsistent with another portion of the ALJ's RFC assessment, Tr. 16 (requiring that Plaintiff's workstation be within five minutes of a restroom facility), but does not appear to conflict with other evidence in the record. *But see* Tr. 635 (noting "[s]lightly prolonged" bladder voiding without providing further details).

determination the ALJ was entitled to make. *Jackson v. Astrue*, No. 05-CV-1061, 2009 WL 3764221, at *7 (N.D.N.Y. Nov. 10, 2009) ("The ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." (internal quotation marks omitted)).

The ALJ observed that Plaintiff first used the restroom "about an hour" into the proceeding. Tr. 17, 65–66, 69. She testified that she limited her fluid intake that morning, a technique she admittedly used while she was working. Tr. 69–70. She testified that her mouth would get dry and she did not want to deprive herself of liquid, which led to coughing. Tr. 70. Without citation to authority, Plaintiff claims that the ALJ could not rely on Plaintiff's ability to sit through the hearing for about an hour because the ALJ failed to consider Plaintiff's testimony that she was only able to go that long without using the restroom by depriving herself of liquid prior to the hearing. ECF No. 6-1 at 16–17. Plaintiff claims that she would be unable to use this technique while working because it would result in dry mouth from talking on the phone, which is required for her past relevant work. *Id.*

Plaintiff's argument is belied by her own testimony. She testified that she used this technique while she was working previously, which involved spending seventy-five to ninety percent of her time on the telephone. Tr. 57, 69–70; *see also* Tr. 264 (noting that her conditions did not cause her to make changes in her work activity). She also testified that her bladder issues have been an ongoing problem for a decade, extending back to when she was previously employed. Tr. 54. It was never a job threatening condition while she was working. Tr. 55. Plaintiff fails to explain why, if she used this technique and was able to work with this limitation previously, she would not be able to do so again. Although an ALJ's observations of physical demeanor alone are

9

typically entitled to limited weight in evaluating a claimant's credibility, *Henley v. Berryhill*, No. 17-CV-445, 2018 WL 3866670, at *5 (W.D.N.Y. Aug. 15, 2018), the Court finds no fault in the ALJ's reliance, in part, on his observations regarding Plaintiff's ability to sit through a portion of the hearing coupled with her testimony regarding her past ability to work despite her condition. 20 C.F.R. § 404.1529(c)(3) (providing that the SSA "will consider all of the evidence presented, including information about [a claimant's] prior work record, [a claimant's] statements about [her] symptoms, evidence submitted by [her] medical sources, and observations by [the SSA's] employees and other persons"); *see also Johnson*, 669 F. App'x at 47 (noting the ALJ considered the claimant's previous ability "to maintain a job for thirteen years" in determining that his impairments did not "significantly limit his capacity" to work).

Finally, Plaintiff relies heavily on *Lawton v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 378 (W.D.N.Y. 2019). ECF No. 6-1 at 15–16; ECF No. 11 at 4. In *Lawton*, the ALJ determined that, due to chronic prostatitis, the claimant required "some accommodation for restroom breaks," which the ALJ "determined should be a 'one-to-three minute bathroom break every 30 minutes.'" 351 F. Supp. 3d at 385. In *Lawton*, the ALJ did not explicitly explain that determination, claimant's testimony clearly contradicted the ALJ's RFC assessment, the ALJ mischaracterized the record, and the only medical opinion regarding the claimant's physical limitations noted that the claimant "had no physical limitations." *Id.* at 384–85. That opinion, however, did not "include an assessment of [the claimant]'s limitations relating to his chronic prostatitis." *Id.* Conversely here, while the ALJ's explanation for the precise degree of limitation may be lacking, Plaintiff's testimony does not contradict the ALJ's RFC determination, the ALJ did not mischaracterize the

record,[6] and there is no indication that the opinions of Drs. Eddib and Schwab did not consider Plaintiff's bladder issues.

In short, Plaintiff has not mustered any evidence that is inconsistent with the ALJ's RFC determination regarding the off-task-time limitation. It is generally "Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ." *Beaman v. Comm'r of Soc. Sec.*, No. 18-CV-1344, 2020 WL 473618, at *6 (W.D.N.Y. Jan. 28, 2020); *see Cook*, 818 F. App'x at 109–10. Plaintiff has not satisfied that burden.[7]

### 2. Plaintiff's Ability to Use Her Hands

The ALJ determined that Plaintiff can frequently handle and finger but cannot perform "forceful gripping and grasping" with her right hand. Tr. 16. Plaintiff argues that this determination is not supported by substantial evidence. ECF No. 6-1 at 21–25; ECF No. 11 at 5–6. The Court disagrees.

As an initial matter, Plaintiff contends that the ALJ's finding regarding her ability to engage in "forceful gripping and grasping" is vague and contradicts the ALJ's finding that she can frequently handle with her right hand. ECF No. 6-1 at 21–22; ECF No. 11 at 5–6. Plaintiff's argument is not well supported. Plaintiff claims that the SSA considers gripping and grasping to be subsets of "handling" activities, ECF No. 6-1 at 21 (citing Social Security Ruling 85-15, 1985 WL 56857, at *7 (1985) (noting that handling includes "seizing, holding, grasping, turning or

---

[6] Plaintiff notes that the ALJ mischaracterized the record by stating that the Plaintiff took an hour to drive to the hearing, stopping five times. ECF No. 6-1 at 17 (citing Tr. 17). Plaintiff actually testified that her ride in was about a half hour, she went to the restroom five times before leaving, she went again after she arrived, and she went again before the hearing started. Tr. 40. Plaintiff does not appear to argue that this mischaracterization was reversable error. The ALJ's error was favorable to the Plaintiff.

[7] To the extent Plaintiff argues the ALJ had a duty to further develop the record, ECF No. 6-1 at 18, the Court disagrees. "[T]he ALJ was not faced with 'any clear gaps in the administrative record' that gave rise to an affirmative obligation to seek a medical opinion." *Cook*, 818 F. App'x at 110.

11

otherwise working primarily with the whole hand or hands")). Even so, the inability to forcefully perform a subset of handling activities does not eliminate *all* handling activities. There is no inconsistency in the ALJ's conclusion that Plaintiff can "frequently" handle with her right hand, as long as that handling activity is not "forceful grasping."

Further, to the extent Plaintiff claims the ALJ failed to adequately define "forceful," ECF No. 6-1 at 21–22; ECF No. 11 at 6, Plaintiff cites no authority for the proposition that this term is incomprehensibly vague. There is no indication that the VE struggled to understand the meaning of this term, and Plaintiff's representative declined to question the VE regarding the term's definition. Tr. 59–72. The Court finds no basis to conclude that "forceful" is impermissibly vague. *See Tilles v. Comm'r of Soc. Sec.*, No. 13-CV-6743, 2015 WL 1454919, at *5 (S.D.N.Y. Mar. 31, 2015) (declining to find RFC assessment overly vague where there was no evidence the VE did not understand the meaning of the term).

Plaintiff more generally contends that the ALJ's determination is not supported by substantial evidence. ECF No. 6-1 at 22–25. On July 28, 2016, Plaintiff completed a disability form and noted that she has "no problem" using her hands, Tr. 291, 295, but the ALJ found that, beginning in December 2017, Plaintiff began experiencing pain in her right wrist and hand. Tr. 19. The ALJ accounted for this impairment by limiting Plaintiff to sedentary work and only frequently handling and fingering, no forceful gripping, and no grasping or use of vibratory tools with her right hand. Tr. 16, 22.

In assessing these limitations, the ALJ gave great weight to the September 4, 2018 functional capacity assessment of Joseph Falcone, M.D., Plaintiff's treating physician. Tr. 22, 731. Dr. Falcone noted that Plaintiff was limited to occasionally (defined as one-third of the workday) lifting and carrying ten to fifteen pounds. Tr. 731. He opined that Plaintiff had no limitation in

12

standing, walking, or sitting. *Id.* He did, however, note that Plaintiff was limited in pushing and pulling with her upper extremities due to symptoms from her right carpal tunnel release and that she had limited grip strength in her right hand. Tr. 731. Consistent with his functional capacity assessment, the ALJ also gave significant weight to Dr. Falcone's notes from May 2018 and June 2018 stating that Plaintiff was to "curtail any heavy activities" and to "modify her activities" respectively. Tr. 22, 709, 712.

Most of Dr. Falcone's opined restrictions are accommodated by limiting Plaintiff to sedentary work. *See* 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."); *Vesneske-Margage v. Berryhill*, No. 16-CV-500, 2017 WL 4112021, at *5 (W.D.N.Y. Sept. 18, 2017) ("While some pushing and pulling is involved in light work, . . . these activities are not required to perform sedentary work." (citations omitted)). Further, to the extent it is not accounted for by limiting Plaintiff to sedentary work, limiting Plaintiff to no forceful gripping appears entirely consistent with the limited grip strength noted in Dr. Falcone's functional capacity assessment. As a treating physician, Dr. Falcone's opinion constitutes substantial evidence supporting the ALJ's RFC assessment. *See Colbert v. Comm'r of Soc. Sec.*, 313 F. Supp. 3d 562, 577 (S.D.N.Y. 2018) ("[I]t is well-settled that a . . . [medical] opinion may . . . constitute substantial evidence to support a decision.").

Of course, the ALJ's determination regarding the precise degree of Plaintiff's handling and fingering limitation is not directly supported by Dr. Falcone's opinion. Dr. Falcone's opinion supports a finding that Plaintiff is not limited in her ability to handle and finger (beyond her grasping limitation). *Dumas*, 712 F.2d at 1553 (noting that the SSA may "rely not only on what the record says, but also on what it does not say"). But, as with the off-task-time limitation, Plaintiff

has not marshalled evidence supporting a greater degree of limitation. *See Cook*, 818 F. App'x at 109–10 (finding that, "although there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination," that determination was supported by substantial evidence because treatment notes were "in line" with the determination and plaintiff "failed to adduce any medical evidence inconsistent with the ALJ's determinations").

Plaintiff testified that her primary impediments to returning to her past work would be her need for restroom breaks and issues related to her voice, not her right-hand impairment. Tr. 54. She further testified that her physical therapy was making "a big difference" and that she only experiences a little bit of discomfort. Tr. 49. She also uses her right hand to vacuum, although she does alternate with the left hand. Tr. 51–52. There are also medical records noting improvement in her condition or "good mobility." Tr. 700–02, 706–09, 711–12, 728, 733–34. There is of course evidence in the record suggesting some limitations due to her carpal tunnel syndrome, Tr. 49–51 (testifying to difficulty lifting a quarter off the table and to using an assistive device to pull clothes out of the washer with her right hand), 562–64, 696–99, 718, 721, 727 (noting complaints of pain and/or swelling), but this evidence is not necessarily inconsistent with the ALJ's determination that Plaintiff could frequently, rather than constantly, handle and finger with her right hand. Accordingly, the ALJ's determination regarding Plaintiff's RFC was reasonable and supported by substantial evidence.

B.   *VE Testimony*

Plaintiff argues that the ALJ's step four determination is erroneous because the VE's testimony that Plaintiff could perform her past relevant work as an order clerk was premised on potential employers providing a reasonable accommodation. ECF No. 6-1 at 18–21 (citing *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 803 (1999) ("[W]hen the SSA determines

whether an individual is disabled for [DIB] purposes, it does *not* take the possibility of 'reasonable accommodation' into account, nor need an applicant refer to the possibility of reasonable accommodation . . . and an SSA misjudgment about that detailed, and often fact-specific matter would deprive a seriously disabled person of the critical financial support the statute seeks to provide.")). Plaintiff, however, mischaracterizes the VE's testimony. Although the VE did, at times, state that it would be a "reasonable accommodation" for an employer to place an employee's workstation within minutes of a restroom, Tr. 62–63, 66–67, the VE specifically clarified that, based on her experience, order clerks typically work in a smaller office within five minutes of a restroom. Tr. 67. In fact, Plaintiff testified that her previous work as an order clerk allowed easy access to a restroom. Tr. 39.

There is no indication the VE intended to testify that Plaintiff's past relevant work would only be available if Plaintiff was provided a reasonable accommodation. Accordingly, remand on this basis is unwarranted. *See Pahl v. Colvin*, No. 12-CV-316, 2013 WL 3761545, at *5 (W.D.N.Y. July 16, 2013) ("Because neither the VE's testimony, nor the ALJ's opinion was predicated on a 'reasonable accommodation' being provided to Plaintiff, her objection is without merit.")

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings, ECF No. 8, is GRANTED, and Plaintiff's Motion for Judgment on the Pleadings, ECF No. 6, is DENIED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

    IT IS SO ORDERED.

Dated: March 29, 2021
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court